**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MANUEL ACOSTA, | : | CIVIL ACTION NO. |
| *Plaintiff,* | : | 3:01CV00407 (AWT) |
| | : | |
| v. | : | |
| | : | |
| LT. WOODSON, LT. TERENZI, | | |
| LT. HOURIGAN, LT. COL. BARRY, | | |
| CAPT. WARREN, SGT. STINE & | | |
| SGT. MCGUIRE, | : | JULY 7, 2004 |
| *Defendants.* | | |

## DEFENDANTS' REPLY BRIEF SUPPORTING THEIR MOTION
## FOR SUMMARY JUDGMENT

Plaintiff's brief in opposition to the defendants' motion for summary judgment fails to rebut key elements of the defendants' argument. Accordingly, even if the Court were to accept each and every argument advanced in the plaintiffs brief – a very dubious proposition – the law would still compel judgment for the defendants on the federal claim, and prudential considerations would counsel dismissal of the state law claims.

**I. PLAINTIFF'S DISCRIMINATION CLAIMS FAIL FOR LACK OF ANY EVIDENCE OF DISCRIMINATORY INTENT**

The Amended Complaint contains allegations that each of the defendants discriminated against the plaintiff in violation of 42 U.S.C. § 1981. *See* Counts I (Woodson), III (Terenzi), IV (Warren), V (Barry), VI (Stine), VIII (McGuire), and X (Hourigan). In their Summary Judgment Brief, the defendants argued that most of the incidents that the defendant complained of – failure to allow him to attend dog training school (against Woodson, Terenzi, Warren, and Barry), verbal reprimand (by McGuire), and the issuance of a negative performance evaluation (by Stine) were not "adverse employment actions" sufficient to sustain a Section 1981 claim. *See*

Memorandum of Law Supporting Plaintiff's Motion for Summary Judgment ("Defendants' Brief"), at 11-12, and 15-16.  The defendants also argued that two other actions – the issuance of a negative performance evaluation report and the plaintiff's five-day suspension – could not serve as the basis for claims against these defendants.  *See* Defendants' Brief, at 17-20.  Finally, the defendants argued that "[t]he most critical flaw in the plaintiff's case is a complete dearth of evidence that any of the defendants took any actions against [the plaintiff] because of his race." Defendants' Brief, at 9; *see also* pp. 12-14, 19-20.

In response, the plaintiff argues that both the failure to send the plaintiff to dog school and the negative performance observation report given by Sergeant Stine *are* "adverse employment actions."  Plaintiff's Brief, at 3-5.  The plaintiff makes no claims at all with respect to Sergeant McGuire's verbal reprimand, Sergeant Marchio's issuance of a negative performance evaluation report, or the five-day suspension.  Accordingly, any claims concerning these incidents should be deemed to be abandoned.[1]

More critically, however, the plaintiff completely failed to address the lack of evidence from which a jury could find that any employment action that was taken – adverse or not – was motivated by the plaintiff's race.  As this Court recently stated,

> If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate.  *Celotex Corp.* v. *Catrett,* 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential  element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.* at 322-23, *Accord, Goenaga* v. *March of Dimes Birth*

---

[1] *See, e.g., Palmer* v. *Marion County,* 327 F.3d 588, 598 (7th Cir. 2003) (arguments not presented to the district court in response to summary judgment motions are waived); *United States* v. *Kitsap Physicians Serv.,* 314 F.3d 995, 999 (9th Cir. 2002) (same); *Grenier* v. *Cyanamid Plastics,* 70 F.3d 667, 678 (1st Cir. 1995) (if a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived); *United Mine Workers 1974 Pension Fund* v. *Pittston Co.,* 984 F.2d 469, 478 (D.C. Cir.), *cert. denied,* 509 U.S. 924 (1993) (same rule even with respect to affirmative defenses).

> *Defects Foundation,* 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied by
> showing if it can point to an absence of evidence to support an essential element
> of nonmoving party's claim). In this regard, mere assertions and conclusions of
> the party opposing summary judgment are not enough to defend a well-pleaded
> motion. *Lamontagne* v. *E.I. DuPont de Nemours & Co.,* 834 F. Supp. 576, 580
> (D. Conn. 1993), *aff'd,* 41 F.3d 846 (2d Cir. 1994).

*Mercer* v. *Brunt,* 299 F. Supp. 2d 21, 25-26 (D. Conn. 2004). Here, the plaintiff has failed to

make *any* showing with respect to an essential element of a Section 1981 employment

discrimination claim – that "the adverse employment action occurred under circumstances giving

rise to an inference of discriminatory intent." *See, e.g., Hunter* v. *St. Francis Hospital,* 281 F.

Supp. 2d 534, 541 (E.D.N.Y. 2003). Accordingly, the defendants are entitled to summary

judgment.

## II.    THE PLAINTIFF HAS FAILED TO IDENTIFY AN ADVERSE EMPLOYMENT ACTION

Although the plaintiff's failure to produce any evidence of discriminatory intent is, in

itself, sufficient to foreclose his discrimination claim, the plaintiff has also failed to support his

claim that he suffered an adverse employment action. The plaintiff points to only two incidents

that he alleges constitute "adverse employment actions" – the defendants' failure to send him to

narcotics dog training school, and the issuance of a negative Performance Observation Report by

Sergeant Stine. *See* Plaintiff's Brief, at 3-6. Neither is sufficient.

### A.    *Not Being Allowed To Attend Narcotics Dog Training School Is Not an Adverse Employment Action*

Plaintiff rests his claim of "adverse action" for dog training on his belief that the privilege

of looking after a big dog is somehow "prestigious," and his belief that he might have been

eligible for more overtime if he had been assigned a narcotics dog. *See* Plaintiff's Brief, at 4-5.

However, plaintiff's subjective belief that a desired position is better or more prestigious is

insufficient to defeat a summary judgment motion. *Kocsis* v. *Multi-Care Mgmt.,* 97 F.3d 876,

886 (6th Cir. 1996) (a plaintiff's subjective impressions as to the desirability of one position over another not controlling); *Kelleher* v. *Flawn,* 761 F.2d 1079, 1086 (5th Cir. 1985) (same); *Forkkio* v. *Powell,* 306 F.3d 1127, 1130-31 (D.C. Cir. 2002) (transfer that allegedly occasioned "loss of prestige" not an "adverse employment action"); *cited with approval in Fairbrother* v. *Connecticut,* 306 F. Supp. 2d 154, 164 (D. Conn. 2003).

Although two of the cases cited by the plaintiff *do* support the notion that loss of overtime opportunities may be an "adverse employment action," it is not clear what evidence was presented to the *Stalter* and *O'Bar* courts to make the claims more than idle speculation. Certainly, the plaintiff here has done nothing more than baldly assert that he might have had more opportunities for overtime if he were assigned a narcotics dog. This is insufficient. *See, e.g., Conley* v. *Village of Bedford Park,* 215 F.3d 703, 711-12 (7th Cir. 2000) (plaintiff "fails to come forward with any evidence to substantiate his allegations" like evidence that others were given overtime and he was not, or that he received less overtime than others; his "unsupported allegation that he was denied overtime" insufficient to defeat summary judgment); *see also Watkins* v. *Henderson,* 2001 U.S. Dist. LEXIS 2523, * 17 n.6 (S.D. Ind. 2001) (plaintiff's assertion of lost overtime opportunities speculative without documentation of amount of overtime hours he normally worked and the number of hours comparable employees worked during the same period.). Plaintiff's assertion of adversity requires the assumption that he would have *passed* dog training school, been assigned a dog, *and* have received more overtime thereafter – a string of speculation not remotely supported by the record before the Court.

**B.    *The Negative Performance Observation Report  Is Not an Adverse Employment Action***

Plaintiff's claim that the negative Performance Observation Report ("POR") prepared by Sergeant Stine is an adverse employment action is no stronger.  He bases the claim on the fact

that Sergeant Marchio – a supervisor who is not a defendant – subsequently attached this negative POR to his annual Performance Evaluation Report, and thus plaintiff argues that the negative POR is equivalent to a negative evaluation. *See* Plaintiff's Brief at 6. Citing dicta from *Treglia* v. *Town of Manlius,* 313 F.3d 713, 720 (2d Cir. 2002), plaintiff claims that a negative evaluation *can* be considered a negative employment action. *Id.* However, "Title VII was intended to address *ultimate* employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions." *Guglietta* v. *Meredith Corp.,* 301 F. Supp. 2d 209, 215 (D. Conn. 2004), *quoting Dollis* v. *Rubin,* 77 F.3d 777, 781-82 (5th Cir. 1995). Although the negative POR undoubtedly played a role in Sergeant Marchio's later decision to issue the negative annual evaluation, the POR was clearly not an "ultimate" decision, and there is nothing in the record to suggest that Sergeant Stine issued the POR with any intent that it become a permanent record.

Even if the negative POR *were* considered to be equivalent to a negative annual evaluation, this Court has clearly indicated that "negative evaluations alone, without any accompanying adverse consequences, are not adverse employment actions." *Fairbrother* v. *Connecticut,* 306 F. Supp. 2d 154, 166 (D. Conn. 2003), *quoting Pellei* v. *Int'l Planned Parenthood Federation/Western Hemisphere Region, Inc.,* 1999 U.S. Dist. LEXIS 15338 at *34 (S.D.N.Y. 1999). The plaintiff does not allege that any negative consequences followed, even from his negative annual evaluation, let alone from the POR issued by Defendant Stine.

## III.  PLAINTIFF HAS ABANDONED ANY HOSTILE WORK ENVIRONMENT CLAIM

In their brief, the defendants indicated that it was not clear whether the plaintiff was making a hostile work environment claim, but argued that summary judgment was appropriate with respect to such a claim if it *were* being asserted. *See* Defendants' Brief, at 20-24. The

plaintiff's brief completely ignores this argument.  Accordingly, it appears that the plaintiff was *not* making a hostile work environment claim, or, at very least, that he has now waived any such claim.  *See supra* n.1 and accompanying text.

## IV.    THE FACTS RELIED UPON BY THE PLAINTIFF CANNOT SUPPORT A CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiff argues that his intentional infliction of emotional distress claim should be submitted to a jury.  Although the plaintiff argues that summary judgment is inappropriate with respect to the question of whether the defendants *intended* to cause emotional distress, and whether the plaintiff actually suffered such distress (*see* Plaintiff's Brief, at 7 and 10), the defendants have not requested summary judgment on those grounds.  The issue is whether the conduct complained of is "extreme and outrageous" under Connecticut law – a question that is independent of intent.  "[W]here the defendant's state of mind is purposefully to inflict emotional distress on the plaintiff, the plaintiff may not recover unless the defendant's conduct in pursuance of that intent is also extreme and outrageous."  *Carrol* v. *Allstate Ins. Co.*, 262 Conn. 433, 451-52 (2003) (Borden, *J.*, concurring).[2]

The plaintiff relies upon two unreported Superior Court cases for the proposition that racial and ethnic slurs can constitute extreme and outrageous conduct under Connecticut tort law: *Leone* v. *New England Communications,* 2002 WL 1008470, 2002 Conn. Super. LEXIS 1361 (Quinn, J. April 10, 2002), and *Denault* v. *Connecticut General Life Insurance Company.*[3]

---

[2] This Court opined that Justice Borden's concurring opinion properly described the current state of Connecticut law on this point in *Copeland* v. *Home and Community Health Services, Inc.,* 285 F. Supp. 2d 144 , 150 (D. Conn. 2003).

[3] The plaintiff's brief does not include a citation to the *Denault* decision; however, the reference appears to be to a Memorandum of Decision on Defendant's Motion for Summary Judgment, dated June 22, 1999, by Judge Thomas Corradino.  The version of the decision which appears at 1999 Conn. Super. LEXIS 1926, however, appears to be incomplete and missing the sections critical to the plaintiff's argument.  The CASEMAKER database maintained by the Connecticut Bar Association has what appears to be an intact

*Leone* denied a motion to strike, and like a motion to dismiss, the decision was based solely on the pleadings. The facts as related by the complaint indicated far more pervasive harassment than the plaintiff has demonstrated here:

> [T]he owners of the corporation referred to the plaintiff as "dago, wop, Farther Sarducci or Gimabroni," . . . they placed sexually offensive comments and pictures on his computer, . . . they made comments about his penis, his sexual performance, homosexuality and the like.

*Leone,* 2002 Conn. Super. LEXIS at * 8. *Denault* is the stronger case for the plaintiff, since it was decided at the summary judgment stage, and involved rather fewer comments than *Leone.* Acknowledging that "cases in this area reach divergent results to say the least," and that the case was "a close one," the Court ultimately allowed the emotional distress claim to go to the jury. Both *Denault* and *Leone,* however, pre-date the key decisions from the Connecticut Supreme Court and Appellate Court that are cited in the defendants' brief: *Appleton* v. *Board of Educ.,* 254 Conn. 205 (2000), *Dollard v. Board of Educ.,* 63 Conn. App. 550 (2001), and *Carnemolla* v. *Walsh,* 75 Conn. App. 319 (2002). *See* Defendant's Brief, at 26-27. Plaintiff makes no effort to distinguish these later cases, or argue that the incidents described in his brief are somehow worse that what was found to be insufficient in those precedents.

Certainly "racial and ethnic slurs *can* constitute extreme and outrageous conduct." Defendant's Brief, at 8 (emphasis added). However, there is no reason to believe that Connecticut courts would adopt a *per se* rule that *all* such slurs constitute "extreme and outrageous conduct" regardless of frequency, the nature of the slurs, and the general circumstances in which they were uttered. Here, the plaintiff has alleged that *one* defendant – Sergeant McGuire – "used to call Hispanics paco." Acosta Dep., App. at 64, lines 21-22.

version of the decision, which appears at 99-CBAR-0935. A copy is attached to this brief for the Court's convenience.

Although the plaintiff's brief states that McGuire "frequently" referred to people of Hispanic origin as "Paco" (Defendant's Brief, at 9), in fact there is nothing in the record from which one could draw an inference as to frequency.  Plaintiff has alleged that *one* defendant – again, Sergeant McGuire – posted *one* cartoon with a dog wearing a trooper's hat that said "Paco." Plaintiff quotes in full the text of two other posted cartoons in his brief at page nine; however, the plaintiff admitted that he had no personal knowledge or information indicating that either one had been posted by one of the defendants.[4]  The plaintiff has no evidence that defendants Woodson, Hourigan, Terenzi, Barry, Warren, or Stine ever made derogatory remarks about Hispanic Americans or Cuban Americans, and can only come up with the two incidents involving defendant McGuire described above.  There is no reason, based upon Connecticut precedent, to believe that state courts would recognize a cause of action for intentional infliction of emotional distress on these facts.

At very best, plaintiff's argument for a *per se* rule that racial or ethnic "slurs" constitute "extreme and outrageous" behavior presents a novel theory of liability that should be recognized, if at all, by state courts, rather than a federal district court exercising supplemental jurisdiction. *See, e.g., Fay* v. *South Colonie Cent. Sch. Dist.,* 802 F.2d 21,  34 (2d Cir. 1986) ("The presence of unresolved questions under New York family law" should have alerted District Court "to the fact that [it] need not, and therefore should not, decide the pendent claim"), *overruled in part on other grounds, Taylor* v. *Vermont Dep't. of Educ.,* 313 F.3d 768, 786 (2d Cir. 2002); *see also Robison* v. *Via,* 821 F.2d 913, 926 (2d Cir. 1987) ("Where the district court is not required to resolve novel state-law issues, it is often preferable to decline pendent jurisdiction so that state

---

[4] *See* Acosta Dep., App. at 66, lines 9-10 (didn't know who posted the Taco Bell cartoon); and App. at 69, lines 1-6 (didn't know who posted Elian Gonzalez cartoon, but "assumed" that Sergeant Stine was responsible "because its [*sic*] his nature".)

courts can develop and apply state law on such issues.").  Indeed, the statute authorizing the

exercise of supplemental jurisdiction explicitly recognizes the presence of novel issues of state

law as grounds for declining to exercise such jurisdiction over state law claims.  28 U.S.C.

§ 1367(c)(1).  Thus, if the Court harbored any doubt that Connecticut courts would grant

summary judgment on the plaintiff's emotional distress claim, the lack of any support for the

plaintiff's theory at the appellate level, and the lack of any foundation for the plaintiff's federal

discrimination claims, provide strong reasons why the Court should decline to exercise

supplemental jurisdiction over this claim.  *See* 28 U.S.C. § 1367(c)(1) and (3).

## CONCLUSION

        For the reasons set forth above, and for the reasons set forth in the defendants' principal

brief, the defendants respectfully request that the Court grant their motion for summary

judgment.

                                        DEFENDANTS,
                                        Lt. Woodson, et al.

                                        RICHARD BLUMENTHAL
                                        ATTORNEY GENERAL


                              BY:_____
                                        Mark P. Kindall
                                        Assistant Attorney General
                                        55 Elm Street
                                        P.O. Box 120
                                        Hartford, CT 06141-0120
                                        Tel:  (860) 808-5340
                                        Fax:  (860) 808-5385
                                        Federal Bar No.: ct13797
                                        E-Mail: Mark.Kindall@po.state.ct.us

## **CERTIFICATION**

I hereby certify that a copy of the foregoing Reply Brief was mailed this 7th day of July,

2004, first class, postage prepaid to:

Robert M. Berke, Esq.
135 Elm Street
Bridgeport, CT 06604
Tel.: (203) 332-6000
Fax: (203) 332-0661

_____
Mark P. Kindall
Assistant Attorney General